BLANK ROME, LLP
Attorneys for Plaintiff
KINGS OCEAN SHIPPING CO. LTD.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KINGS OCEAN SHIPPING CO. LTD.,<br><br>Plaintiff,<br><br>-against-<br><br>RICHFIELD CORPORATION LTD., and RICHFIELD MARINE AGENCIES (S) PTE. LTD.<br>Defendants. | 08 Civ. 1709 (RJS)<br><br>**DECLARATION IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT** |

JACK A. GREENBAUM deposes and says:

1.      I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of this action and submit this Declaration in opposition to the motion by Defendant RICHFIELD MARINE AGENCIES (S) PTE. LTD. (hereafter "RICHFIELD MARINE") to vacate or modify the attachment order against its property and to vacate the attachments of several electronic fund transfers, based on the assertion that RICHFIELD MARINE is not an alter ego of Defendant RICHFIELD CORPORATION LTD. (hereafter "RICHFIELD CORP.")

2.      In support of its motion, RICHFIELD MARINE had adduced a Declaration of its Managing Director, C.C. Tan, dated July 29, 2008 ("First Tan Declaration"). When Deponent demonstrated before the Court on July 31, 2008 that the First Tan Declaration conflicts with the

Richfield Group's internet website as it existed when this action was filed, RICHFIELD MARINE adduced a supplemental Declaration by Mr. Tan, dated Aug. 4, 2008 ("Second Tan Declaration"), purporting to explain away the conflicts. The Second Tan Declaration, however, is internally inconsistent and is also contradicted by RICHFIELD MARINE's pre-motion website. In short, both Declarations are unworthy of belief.

3.      The First Tan Declaration alleges, at ¶ 12:

> Apart from the unfortunate (and apparently very misleading) fortuity of the companies having similar names, Richfield Corporation Ltd. is *wholly unrelated* to RICHFIELD MARINE (and/or Richfield International Ltd. and/or Speeda.)" (Emphasis by Mr. Tan.)

4.      RICHFIELD MARINE is said to be a subsidiary of Richfield International Ltd., and Speeda a subsidiary of RICHFIELD MARINE. *Id.* at ¶¶ 6-7.

5.      Mr. Tan stated he is "aware of only one arms-length business transaction ever being conducted between RICHFIELD MARINE and Richfield Corporation Ltd.," namely the former acted as broker and local port agent for the latter on the charter party at issue in this case. *Id.* at ¶¶ 20-24.

6.      Additionally, the First Tan Declaration included as Ex. B a letter from Richfield International Limited, asserting: "There are currently no other Subsidiary entities, Companies or Associated Companies that Richfield International Limited has an interest in or affiliation with," other than RICHFIELD MARINE and Speeda.

7.      In support of the allegation that the companies are separate, the First Tan Declaration cited the Richfield Group's website, *id.* at ¶ 9. Indeed, as of the date of the First Tan Declaration, that website lacked any mention of RICHFIELD CORP. But that very website, as it existed at the time this law suit was filed and for some time thereafter, contradicts the allegation that there is no relationship between RICHFIELD CORP. and RICHFIELD MARINE.

Inarguably, Mr. Tan intended to mislead the Court by citing a website that had been altered to conceal the very relationship that he denies exists.

8.     Attached hereto as Ex. 1 are the pages from the Richfield Group's website, printed on May 19 and June 3, 2008, which were handed up at the conference on July 31. The pages dated May 29 set out a list of "Affiliated & Associated Members of the Richfield Group of Companies," which includes RICHFIELD CORP.

9.     The pages dated June 3 in Ex. 1 hereto include a "Group Organisation Structure." Under the "Investment" section, there is the "Shanghai Representative Office" of RICHFIELD MARINE, whose business is said to be "Chartering, Shipbrokering, Ship Agency for Liner and Tramper." Directly under that name and connected to it by a vertical line is RICHFIELD CORP., whose business is said to be "Offshore Investment." Obviously, a company with which there had been only one transaction would not be listed in the corporate group's organization chart, much less as responsible for the Group's offshore investment business.

10.     It is clear that both the First Tan Declaration and the Richfield International Ltd. letter annexed to it are purposefully misleading.

11.     In an ill-conceived attempt to explain away the obvious conflicts between the First Tan Declaration and the website pages discussed above, the Second Tan Declaration alleges, at ¶¶ 11-20, that RICHFIELD CORP. was deleted from the website not to conceal the relationship, but to respond to an inquiry by the Australian Securities & Investments Commission ("ASIC") regarding affiliated and associated companies. That inquiry was received on June 23, 2008 and did not identify any such issue. (Ex. B to Second Tan Declaration; note "received" stamp dated June 23, 2008.) RICHFIELD CORP. allegedly was deleted from the

website after a meeting with ASIC on July 2, 2008. (Second Tan Declaration at ¶¶ 15, 18, 20). That is demonstrably untrue.

12.     In the course of preparing an Amended Complaint to add RICHFIELD MARINE as a Defendant, Deponent went on the Richfield Group website on June 17. Annexed as Ex. 2 hereto is a page printed from that website on that date, which shows that RICHFIELD CORP. had already disappeared from the website long before the July 2nd meeting that supposedly prompted the change, and before Richfield International Ltd. ever received the letter from ASIC on June 23rd.

13.     As noted in footnote 1 to the First Tan Declaration, on March 31, 2008, deponent sent to RICHFIELD MARINE's office address a notice of restraint of a fund transfer belonging to RICHFIELD CORP. In other words, RICHFIELD MARINE was aware of this attachment action early on, and attempted to distance itself from RICHFIELD CORP. by removing the latter from the Group's website even before RICHFIELD MARINE was named as a co-defendant. It should be noted that RICHFIELD MARINE did not respond to Deponent's letter or say that RICHFIELD CORP. was not located at that address.

14.     Additionally, Blank Rome's Hong Kong office has corresponded with RICHFIELD CORP. at the same Shanghai address regarding Plaintiff's prosecution of the arbitration in Hong Kong. Blank Rome received no response at all, and particularly no response saying that RICHCO CORP. was not located at that address. Nevertheless, RICHCO CORP. has admitted it is apprised of the arbitration and is deliberately ignoring it. See Ex. D to the First Tan Declaration.

15.     It should not go unsaid that the Second Tan Declaration is inherently unbelievable. At ¶ 7, Mr. Tan states that RICHFIELD CORP. was previously included on the

website because "[w]e thought it would be a good business idea to include a few of the companies that we did business with . . . ." But Mr. Tan alleges there was only one transaction between RICHFIELD MARINE and RICHFIELD CORP. It would make no sense to name someone with whom there was a single transaction as an affiliated or associated company, or someone "we did business with . . ." It beggars belief if it is suggested that RICHFIELD CORP. was first added to the website by reason of this single transaction after the charter party was made on December 21, 2007.

16.     Mr. Tan has not even tried to explain the fact that RICHFIELD CORP. was linked Chart to RICHFIELD MARINE in the Group Organisation chart, and was said to be responsible for the Richfield Group's "offshore investment" business. He has not attempted to explain why the Group Organisation chart has altogether disappeared from the website.

17.     Mr. Tan goes on to say, at ¶ 8, the title "Affiliated & Associated members of the Richfield Group of Companies" was logical because all but one of the companies "began with the name Richfield." Paragraphs 7 and 8 appear to imply that all of the "Affiliated & Associated" companies were merely business associates of RICHFIELD MARINE, Richfield International Ltd., and/or Speeda, with no ownership or management relationship. But the only company deleted from the website as of June 17, 2008 was RICHFIELD CORP., despite ASIC's alleged concern that the website named multiple companies who were not named in the Group's financial report. (Second Tan Declaration at ¶ 16; compare Exs. 1 and 2 hereto.) Plainly, that is because the only relationship the Richfield Group needed to conceal was its relationship with RICHFIELD CORP.

18.     Moreover, if the purpose of listing companies with which RICHFIELD MARINE does business was to show it to be a substantial company, as alleged at ¶ 7 of the Second Tan

Declaration, it would make no sense to limit the list to companies with "Richfield" in the name. Plainly, the purpose of listing companies named "Richfield" was to hold out those companies as directly related by ownership or control, and RICHFIELD MARINE should not now be heard to deny the truth of what it held out to be true.

19.     It should also be mentioned that, following the restraints of two fund transfers of RICHFIELD CORP. in March and April 2008, no further transfers or restraints in that name have been reported by the garnishee banks. Either RICHFIELD CORP. has ceased doing business in U. S. Dollars (all such transfers are processed by intermediary banks in the U. S., mainly in New York City), or is using some other name to move its U. S. Dollars in order to evade the process of maritime attachment in this case.

20.     In the event that the allegations of the Complaint are considered insufficient to sustain an alter ego claim, even in the face of the inferences that may be drawn from the demonstrated false Declarations submitted in support of the motion to vacate, we request that Plaintiff be permitted to amend the Complaint in the form annexed as Ex. 3 hereto, and that the attached funds remain under restraint pursuant to the Second Amended Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, N. Y. on August 8, 2008

JACK A. GREENBAUM

# EXHIBIT 1



# 富田集团

# The Richfield Group

**For more information, please contact us at:**

## Richfield International Limited
**(Listed on the Australian Securities Exchange)**

**250 Tanjong Pagar Road**
**#08-00 St. Andrew's Centre**
**Singapore 088541**

**Tel : (65) 6225 0133 (Directory)**
**Fax : (65) 6225 7115 / (65) 6226 3303**
**Telex : RS 35553 RISHIP**
**Email : group@richfield.com.sg**
**Website : www.richfield.com.sg**

**Established Since 1984 - Over 20 Years In Shipping**

**ISO 9001:2000 Certified**









# Group Organisation Structure

**Richfield International Limited**
(A Public-Listed Company on the Australian Securities Exchange)

## Commercial

**Vanuatu Registries Limited**
Ship Registry, Vanuatu International Company Registration & Maritime Affairs

## Shipping

**Richfield Marine Agencies (S) Pte Ltd**
Shipping and Port Services

**Speeda Shipping Company (S) Pte Ltd**
Container Traffic Operator and Ship Operator

**Richfield Shipmanagement Pte Ltd**
Ship Management, Technical Management & Crew Manning

## Investment

**Richfield Marine Agencies (S) Pte Ltd**
**(Shanghai Representative Office)**
Chartering, Shipbrokering, Ship Agency for Liner and Tramper

**Richfield Corporation Limited**
Offshore Investment

Page 1 of 2

*Richfield Corporate Profile*

*CORPORATE PROFILE*



# THE RICHFIELD GROUP

The Richfield Group of Companies comprising:

**Wholly-owned by Richfield International Limited**
**(A Public-Listed Company on the Australian Securities Exchange)**



**ASX**
AUSTRALIAN STOCK EXCHANGE

- Richfield Corporate Profile



- Richfield Marine Agencies (S) Pte Ltd
- Speeda Shipping Company (S) Pte Ltd
- Shanghai Richfield Marine Agencies (S) Pte Ltd

Affiliated & Associated Members of the Richfield Group of Companies:

- Richfield Shipmanagement Pte Ltd
- Richfield Shipmanagement (Yangon) Co Ltd
- Richfield Shipping (Bangladesh) Pvt Ltd
- Richfield Group Corporation Pte Ltd
- Richfield Corporation Limited
- Vanuatu Registries Ltd

**Bankers:**

1) JPMorgan Chase Bank, N.A.
2) Citibank Singapore Ltd

Richfield's strategy is to grow the current profitability of its business by utilising its specialist operational skills, management's long standing industry relationships, the increasing scale of operation and its strategic concentration on the Asia Pacific region.

**EXHIBIT 2**

## CORPORATE PROFILE



# THE RICHFIELD GROUP

The Richfield Group of Companies comprising:

Wholly-owned by **Richfield International Limited**
**(A Public-Listed Company on the Australian Securities Exchange)**



- Richfield Marine Agencies (S) Pte Ltd
- Speeda Shipping Company (S) Pte Ltd
- Shanghai Richfield Marine Agencies (S) Pte Ltd

Affiliated & Associated Members of the Richfield Group of Companies:

- Richfield Shipmanagement Pte Ltd
- Richfield Shipmanagement (Yangon) Co Ltd
- Richfield Shipping (Bangladesh) Pvt Ltd
- Richfield Group Corporation Pte Ltd
- Vanuatu Registries Ltd

### Bankers:

1) JPMorgan Chase Bank, N.A.
2) Citibank Singapore Ltd



Richfield's strategy is to grow the current profitability of its business by utilising its specialist operational skills, management's long standing industry relationships, the increasing scale of operation and its strategic concentration on the Asia Pacific region.

**EXHIBIT 3**

BLANK ROME, LLP
Attorneys for Plaintiff
KINGS OCEAN SHIPPING CO. LTD.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KINGS OCEAN SHIPPING CO. LTD.,<br><br>Plaintiff,<br><br>-against-<br><br>RICHFIELD CORPORATION LTD. and<br>RICHFIELD MARINE AGENCIES (S) PTE.<br>LTD.<br><br>Defendants. | 08 Civ. 1709 (RJS)<br><br>**SECOND AMENDED VERIFIED**<br>**COMPLAINT** |

Plaintiff, KINGS OCEAN SHIPPING CO. LTD. ("Plaintiff"), by its attorneys Blank

Rome, LLP, complaining of the above-named Defendants, RICHFIELD CORPORATION LTD.

and RICHFIELD MARINE AGENCIES (S) PTE., alleges upon information and belief as

follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

2.    At all material times, Plaintiff was and now is a foreign corporation with no place

of business in this District.

3.     At all material times, Defendant RICHFIELD CORPORATION LTD. (hereafter "RICHFIELD CORP.") was and is a foreign corporation with its offices at Room 1010, Huasheng Bldg. No. 399, Jiujiang Road, Shanghai 2001, PRC, and no office or place of business in this Judicial District.

4.     At all material times, Defendant RICHFIELD MARINE AGENCIES (S) PTE. LTD. (hereafter "RICHFIELD MARINE") was and is a foreign corporation with its offices at Room 1010, Huasheng Bldg. No. 399, Jiujiang Road, Shanghai 2001, PRC, and no office or place of business in this Judicial District.

### AS A FIRST CLAIM, AGAINST RICHFIELD CORP.

5.     On or about December 21, 2007, Plaintiff, as owner of the M/V TINAI ("the Vessel"), entered into a charter party ("the Charter") with, ostensibly, RICHFIELD CORP., as the nominal Charterer, for the carriage of a part cargo of general cargo from Shanghai to Luanda, Angola.

6.     The Vessel was detained 21.25 days at Luanda attributable to RICHFIELD CORP.'S cargo, for which RICHFIELD CORP. is liable to recompense Plaintiff at the rate of US$25,000 per day, for a total detention charge of $531,250.

7.     Additionally, Plaintiff is entitled to recover shifting charges of US$4,477, stevedore charges of $24,736.95, and additional hour charges of US$15,837.

8.     Plaintiff performed all obligations required of it under the Charter, but RICHFIELD CORP. has failed to pay the aforesaid charges, despite due demand, and is liable to Plaintiff for the sum of US$576,301.85.

## AS A SECOND CLAIM, AGAINST RICHFIELD MARINE

9.      RICHFIELD CORP. entered into the Charter as agent on behalf of RICHFIELD MARINE. Therefore, RICHFIELD MARINE is liable as a principal for the debts due Plaintiff under the Charter.

## AS A THIRD CLAIM, AGAINST RICHFIELD MARINE

10.     RICHFIELD CORP., RICHFIELD MARINE, and nonparty Richfield International Ltd., held themselves out to the world as members of the "Richfield Group" on the Richfield Group's website.

11.     RICHFIELD CORP. was held out on said website to be linked directly to RICHFIELD MARINE and was said to be responsible for the Richfield Group's foreign investment business.

12.     RICHFIELD MARINE was held out on said website to be the ship chartering company for the Richfield Group. However, RICHFIELD MARINE requested that the name of RICHFIELD CORP., the foreign investment firm, appear in the charter, in lieu of the name RICHFIELD MARINE.

13.     Nevertheless, Plaintiff's communications in the negotiation and performance of the Charter were exclusively with RICHFIELD MARINE at the email address cargoship@richfieldgroup.com.cn, and never with RICHFIELD CORP.

14.     The freights due under the Charter were paid by RICHFIELD MARINE, not by RICHFIELD CORP.

15.     After learning of this maritime attachment action, RICHFIELD MARINE and Richfield International Ltd. attempted to conceal their relationship with RICHFIELD CORP. by deleting RICHFIELD CORP. and an organization chart from their website.

16.     In this lawsuit, the Managing Director of RICHFIELD MARINE, C.C. Tan, falsely alleged that RICHFIELD MARINE was "wholly unrelated" to RICHFIELD CORP. and that their sole business together was a single principal-agent transaction in connection with the Charter, in contradiction of the Richfield Group's website as it existed before the attempted concealment.

17.     In this lawsuit, Mr. Tan falsely alleged that RICHFIELD CORP. was deleted from the said website only because of an inquiry by the Australian Securities & Investments Commission ("ASIC") that RICHFIELD MARINE's parent company, Richfield International Ltd., received on June 23, 2008, and after a meeting with ASIC on July 2, 2008. In fact, RICHFIELD CORP.'s name was deleted from the website prior to those dates.

18.     As a consequence of Mr. Tan's demonstrated false testimony, it may be inferred that all of his allegations supposedly showing that RICHFIELD MARINE is not related to RICHFIELD CORP. are false.

19.     Additionally, Plaintiff's counsel wrote to RICHFIELD CORP. at the admitted address of RICHFIED MARINE regarding the restraint of RICHFIELD CORP.'s funds in this case, and the prosecution of Plaintiff's arbitration in Hong Kong. Neither RICHFIELD MARINE nor RICHFIELD CORP. ever responded to say that RICHFIELD CORP. was not located at that address, and RICHFIELD CORP. admitted in this law suit that it is apprised of the arbitration and has intentionally ignored it.

20.     Upon information and belief, RICHFIELD CORP. and RICHFIELD MARINE are commonly owned and/or managed, and RICHFIELD CORP.'s business is conducted in whole or in part from the offices of and by employees of RICHFIELD MARINE.

21.    Upon information and belief, RICHFIELD CORP. is dominated and controlled by RICHFIELD MARINE and its officers or managers.

22.    Upon information and belief, RICHFIELD CORP. and RICHFIELD MARINE commingle their funds and/or pay one another's obligations to third parties, and/or RICHFIELD MARINE is an agent of RICHFIELD CORP. for the purpose of receiving and paying monies, as demonstrated by the fact that the freight under the Charter was paid by RICHFIELD MARINE, not RICHFIELD CORP.

23.    Following the restraints of electronic fund transfers belonging to RICHFIELD CORP. in this lawsuit in March and April, no additional such fund transfers have been reported or restrained by any of the garnishee banks in New York. All international transfers of U.S. Dollars are processed by intermediary banks in the U. S., mainly in New York City. The fact that no such transfers have been made in U. S. Dollars since the defendants learned of this law suit leads to the inference that RICHFIELD CORP. ceased doing business in U. S. Dollars, or is transferring and receiving U. S. Dollars under another name, such as RICHFIELD MARINE, for the purpose of evading the process of maritime attachment and garnishment in this case.

24.    Upon information and belief, RICHFIELD CORP. is a shell company that was used by RICHFIELD MARINE as the ostensible charterer in the Charter for the purpose of evading the latter's obligations to Plaintiff under the Charter.

25.    Upon information and belief, RICHFIELD CORP. and RICHFIELD MARINE conduct their operations as a single business unit and in disregard of each other's corporate integrity.

26.    By reason of the premises, RICHFIELD CORP. and RICHFIELD MARINE are alter egos of one another.

27.    The Charter provides for the arbitration of disputes in Hong Kong, and Plaintiff reserves its right to arbitrate its claims, pursuant to 9 U.S.C. § 8.

28.    Arbitrators in Hong Kong routinely award interest, arbitrators' fees, and legal fees and costs to the successful party.

29.    Plaintiff estimates it will recover interest of at least US$92,336 at a rate of 7.5% compounded quarterly for a period of two years, and arbitral and legal costs of at least US$150,000.

30.    The total amount for which Plaintiff seeks issuance of Process of Maritime Attachment and Garnishment herein is **US$818,637.85**.

31.    Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire credits in the hands of garnishees in this District, including but not limited to electronic fund transfers.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee in the District which are due and owing to or otherwise the property of the Defendants up to the

amount of **US$818,637.85** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That this Court award Plaintiff its damages or retain jurisdiction over this matter through the entry of a judgment on the Hong Kong arbitration award.

D.     That Plaintiff may have such other, further and different relief as may be just and proper.

Dated:  New York, NY
       August  , 2008

                      Respectfully submitted,
                      BLANK ROME, LLP
                      Attorneys for Plaintiff
                      KINGS OCEAN SHIPPING CO. LTD.

                      By

                           Jack A. Greenbaum (JG 0039)
                      The Chrysler Building
                      405 Lexington Ave.
                      New York, NY 10174-0208
                      (212) 885-5000
                      jgreenbaum@blankrome.com

## **VERIFICATION**

STATE OF NEW YORK         )
                          : ss.:
COUNTY OF NEW YORK        )

Jack A. Greenbaum, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Blank Rome

LLP, attorneys for the Plaintiff.

2.    I have read the foregoing Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff is that

Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and

statements made to me by representatives of the Plaintiff.

_____
Jack A. Greenbaum

Sworn to before me this
    day of August, 2008

_____
    Notary Public