BLANK ROME, LLP
Attorneys for Plaintiff
KINGS OCEAN SHIPPING CO. LTD.
Jack A. Greenbaum (JG 0039)
The Chrysler Building
405 Lexington Ave.
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KINGS OCEAN SHIPPING CO. LTD.,

          Plaintiff,

       -against-

RICHFIELD CORPORATION LTD., and
RICHFIELD MARINE AGENCIES (S) PTE.
LTD.,
          Defendants.

Docket No.: 08 Civ. 1709 (RJS)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION VACATE ATTACHMENT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 4

A.    Background of maritime attachment ......................................................................... 4

B.    The Basic Rule .......................................................................................................... 5

POINT I    PLAINTIFF'S BURDEN IS MERELY TO ESTABLISH IT
HAS PLED A *PRIMA FACIE* ALTER EGO CLAIM ......................... 6

POINT II    PLAINTIFF HAS MET THE PLEADING STANDARD ................... 8

POINT III    IF THE COURT CONSIDERS THE COMPLAINT TO BE
INSUFFICIENT, PLAINTIFF SHOULD HAVE AN
OPPORTUNITY TO AMEND IT, AND THE RESTRAINED
FUNDS SHOULD REMAIN UNDER ATTACHMENT
PURSUANT TO THE SECOND AMENDED COMPLAINT .......... 12

POINT IV    ELECTRONIC FUNDS TRANSFERS TO A DEFENDANT .......... 12
ARE SUBJECT TO MARITIME ATTACHMENT

CONCLUSION ................................................................................................................................. 13

129038.06501/6659519v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir.
2006) .........................................................................................................4, 5, 6, 7, 8, 12

Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir.
1996) ........................................................................................................................4

Dolco Investments, Ltd. v. Moonriver Development, Ltd., , 486 F. Supp. 2d 261,
2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ..............................................7, 8, 9, 10

FESCO Ocean Management Ltd. v. High Seas Shipping Ltd., 2007 U.S. Dist.
LEXIS 19970 (S.D.N.Y. 2007)...........................................................................3, 7, 10

Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS 35542
(S.D.N.Y. 2008) .............................................................................................10, 11, 12

Ice Flake Maritime Ltd. v. Westcost AS, 2007 U.S. Dist. LEXIS 75677
(S.D.N.Y. 2007).....................................................................................................8, 12

ITEL Cont. Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd., 909 F.2d 698 (1990).....................9

Kirno Hill Corp. v. Holt, 618 F.2d 982 (2d Cir. 1980).........................................................8

Knowles v. People, 15 Mich. 408 (1867) .............................................................................3

Mejia v. City of New York, 119 F. Supp. 2d 232 (S.D.N.Y.) .............................................3

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d
399 (S.D.N.Y. 2007)...............................................................................................4

OGI Oceangate Transport Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist.
LEXIS 46841 (S.D.N.Y. 2007).....................................................................................8

Padre Shipping, Inc. v. v. Yong He Shipping, 553 F. Supp. 2d 328 (S.D.N.Y.
2008) .....................................................................................................................7

Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee,
2007 U.S. Dist. LEXIS 72694 (S.D.N.Y. 2007)............................................................8

Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599
(S.D.N.Y. 1994).............................................................................................................6

Sixteen Thirteen Marine S.A. v. Congentra A.G., 2008 WL 2885307 (S.D.N.Y.
2008) ......................................................................................................................7, 9

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562
(S.D.N.Y. 2007).......................................................................................................7, 11

T&O Shipping, Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153
(S.D.N.Y. 2006)...........................................................................................................11

Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870
(S.D.N.Y. 2006)...................................................................................................7, 8, 11

Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport
N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007)..................................................8

Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y.
2006) ............................................................................................................................6

U.S. v. Weinstein, 452 F. 2d 704 (2d. Cir. 1971) ................................................................3

Wajilam Exports (Singapore) Pte. Ltd v. ATL Shipping Limited, 475 F. Supp. 2d
275 (S.D.N.Y. 2006)................................................................................................9, 10

Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 2007 U.S.
Dist. LEXIS 74477 (S.D.N.Y. 2007).............................................................................8

World Reach Shipping Ltd. v. Industrial Carriers Inc., 2006 U.S. Dist. LEXIS
83224 (S.D.N.Y. 2006).....................................................................................8, 10, 12

**STATUTES**

Federal Rules of Civil Procedure Supplemental Rule B......................................................4

Federal Rules of Civil Procedure Supplemental Rule E(4)(f) ..............................1, 5, 6, 7, 8

Federal Rules of Civil Procedure Supplemental Rule E(2)(a).............................................9

129038.06501/6659519v.1

## PRELIMINARY STATEMENT

Plaintiff, Kings Ocean Shipping Co. Ltd. ("Plaintiff"), submits this memorandum of law and the accompanying Declaration of Jack A. Greenbaum dated August 8, 2008 (the "Greenbaum Decl.") in opposition to the motion by Richfield Marine Agencies (S) Pte. Ltd.. ("RICHFIELD MARINE") to vacate Plaintiff's maritime attachments in this matter.

The relevant facts pertaining to Plaintiff's claims and this motion are fully set forth in the Amended Complaint and the Greenbaum Declaration. In short, Plaintiff alleges that RICHFIELD MARINE is an alter ego and paying agent of co-defendant Richfield Corporation Ltd. ("RICHFIELD CORP."), and therefore is liable to Plaintiff for breach of a charter party that was nominally made in the name of RICHFIELD CORP. RICHFIELD MARINE admits it paid the freights due to Plaintiff from RICHFIELD CORP., but asserts it did so as a broker or port agent. It would certainly be a neat way to avoid maritime attachments to set up a company with the word "Agency" in the name and funnel all funds of the corporate group through the "agency" company's account. RICHFIELD MARINE's mere say-so in this respect at best presents an issue of fact, which Supplemental Rule E(4)(f) motions are not meant to resolve. At worst, RICHFIELD MARINE's sworn declarations in support of its motion are wholly perjured.

RICHFIELD MARINE characterizes its motion as one to dismiss for lack of admiralty subject matter jurisdiction. Obviously, a charter party is a maritime contract and disputes under it are subject to the Court's admiralty jurisdiction. The actual substance of the motion is that the Amended Complaint allegedly fails to state a valid alter ego claim against RICHFIELD MARINE. As encapsulated in RICHFIELD MARINE's Memorandum in Support of its motion (at 5): "Here, it would be pure speculation, in complete contradiction to the sworn Declaration of Chak Chew Tan, to conclude that RICHFIELD MARINE and Richfield Corporation Limited are alter egos."

The problem for RICHFIELD MARINE, however, is that Mr. Tan has submitted not one, but two, demonstrably false Declarations. In the First Tan Declaration, he alleged, at ¶ 12: "Richfield Corporation is *wholly unrelated* to RICHFIELD MARINE (and/or Richfield International Ltd. and/or Speeda)" (emphasis by Mr. Tan), and cited (at ¶ 9) the Richfield Group's website to support that allegation. Plaintiff then showed the Court that the website had been altered to delete RICHFIELD CORP. from a list of affiliated and associated companies, and to delete a "Group Organisation Structure" that linked RICHFIELD CORP. directly to RICHFIELD MARINE, and stated that RICHFIELD CORP. conducted the Group's foreign investment business.

In response, Mr. Tan submitted a supplemental declaration that purported to explain that RICHFIELD CORP. was deleted from the website not to conceal the relationship, but in response to concerns of the Australian Securities & Investments Commission ("ASIC"). The fact is, however, that RICHFIELD CORP. disappeared from the website before the Richfield Group received any such communication from ASIC, and the Second Tan Declaration is patently false. Additionally, Mr. Tan alleged that RICHFIELD CORP. was named in the website to begin with because RICHFIELD MARINE and its parent company wanted to list companies with which they did business, in order to show they were substantial companies themselves. This, of course, directly conflicts with Mr. Tan's allegation in both of his declarations that the only business RICHFIELD MARINE ever did with RICHFIELD CORP. was a brokerage and local port agency transaction on the charter party at issue in this case.

Mr. Tan's Declarations not only fail to support the particular allegations that were shown to be false, but they permit the inference that his entire testimony – including his ultimate denial of an alter ego relationship – is false, pursuant to the maxim *falsus unios, falsus omnibus*. As noted by the Second Circuit, although the testimony of a perjuror is not necessarily inadmissible, nevertheless

-2-

> . . . Such disregard of his oath is enough to justify the belief that the
> witness is capable of any amount of falsification, and to make it no
> more than prudent to regard all that he says with strong suspicion, and
> to place no reliance on his mere statements. . . .

U. S. v. Weinstein, 452 F. 2d 704, 713 (2d Cir. 1971), quoting Knowles v. People, 15 Mich.

408, 412 (1867). Certainly, the affidavit or declaration testimony of such a witness may not be

credited on a motion. Mejia v. City of New York, 119 F. Supp. 2d 232, 259-60 (E.D.N.Y. 2000).

As aptly pointed out in RICHFIELD MARINE's Memorandum (at 8), on a motion to vacate

an attachment for failure to state an alter ego claim, the Court will take into account a defendant's

attempt to mislead the Court and hide the relationship. In Fesco Ocean Management Ltd. v. High

Seas Shipping Ltd., 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y. 2007), the Court took into account the

fact that the defendant's declarations "have proven to be misleading, at best, regarding the

relationships . . . In fact, the inconsistencies between the First Pagelis Declaration and the

Supplemental Pagelis Declaration suggest that Mr. Pagelas endeavored to hide some or all of these

relationships from the Court." Id. at * 12.[1]

In Fesco, the witness at least tacitly fessed up in a supplemental declaration to the fact that his

initial declaration was misleading, if not false. Id. at * 5. Here, the Second Tan Declaration

compounded the misdemeanor by submitting false explanations of the conflicts and contradictions

surrounding the First Tan Declaration.

If the Court nevertheless decides the Complaint lacks sufficient particularity to sustain an

alter ego claim, Plaintiff requests the opportunity to file a Second Amended Complaint, and asks

that the restraints of funds remain in place and subject to the Second Amended Complaint.

---

[1] Underscoring throughout this memorandum is added by us unless otherwise specified.

## ARGUMENT

RICHFIELD MARINE's motion to vacate the attachments is without merit and should be denied.

### A.    Background of maritime attachment.

The provisional remedy of maritime attachment is "a feature of admiralty jurisprudence that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844." Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006). Maritime attachments have found favor in the courts because of the widely recognized fact that it is frequently more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. "Maritime parties are peripatetic, and their assets are often transitory." Aqua Stoli at 443. Indeed, "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies, maritime attachments have particular importance." Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399 (S.D.N.Y. 2007) (citing Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996)). Thus, the policy underlying maritime attachment "has been to permit the attachment of assets wherever they can be found ...." Aqua Stoli at 443. "This policy has been implemented by a relatively broad maritime attachment rule, under which the attachment is quite easily obtained." Id.

Rule B of the Supplemental Rules for Admiralty and Maritime Claims, Fed. R. Civ. P. Supp. R. B, governs the procedure by which a party may attach another party's assets. Rule B provides in relevant part:

> If a defendant is not found within the district, ... a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process.... The court must review

-4-

> the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

"The order of attachment may be requested and granted *ex parte*, though notice of the

attachment to the defendant via appropriate service is required." Aqua Stoli, 460 F.3d at 438.

Supplemental Rule E(4) (f) provides for a prompt hearing as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules ....

## B. The Basic Rule

In Aqua Stoli, the Second Circuit Court of Appeals clarified the circumstances under which a

Rule B attachment should be vacated. As that Court explained:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We also believe *vacatur* is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's *vacatur* power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

Id. at 445 (footnotes omitted).

Aqua Stoli made clear that "Rule B specifies the sum total of what must be shown for a valid

maritime attachment." Aqua Stoli, 460 F.3d at 447. As the Aqua Stoli Court explained, so long as

-5-

the technical requirements of Rules B and E are met, "an attachment should issue if the plaintiff shows that 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445.

In so holding, the Second Circuit expressly rejected the reasoning of numerous district court decisions that had engaged in a broader inquiry under Rule E(4) (f), including those that adopted "a needs test," requiring the plaintiff to show that, even if the defendant cannot be found within the district, plaintiff actually needs security in order to collect on an eventual judgment. Aqua Stoli at 446. The Court also rejected the approach taken by the district court in Royal Swan Navigation Co. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y. 1994), which "would impose a fact-intensive inquiry into the substantiality and nature of a defendant's presence in an adjacent district before deciding whether an attachment should be vacated." Aqua Stoli at 446-47. Rather, the Court held that "Congress chose a determinate rule rather than a flexible standard to ensure that attachments may be obtained with a minimum of litigation." *Id.* at 443.

## POINT I

### PLAINTIFF'S BURDEN IS MERELY TO ESTABLISH IT HAS PLED A *PRIMA FACIE* ALTER EGO CLAIM

While the Second Circuit has not addressed the specific question of what a plaintiff must show to make out a "*prima facie*" admiralty claim, some district courts have held that a plaintiff must make an affirmative showing in the Rule E(4) (f) hearing that there exist "reasonable grounds" or "probable cause" for the attachment. See e.g., Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y. 2006). Under this standard, "although a minimal *prima facie* showing is

sufficient to justify an attachment under Rule B, under Rule E(4) (f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." Id. at 325. [2]

Numerous more recent decisions have concluded, however, that a "reasonable grounds" inquiry is wholly inconsistent with the Second Circuit's holding in Aqua Stoli that a plaintiff need only make a *prima facie* showing to sustain an attachment under Rule B. In Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870, *15 (S.D.N.Y. 2006), the court observed as follows:

> Although Aqua Stoli does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," – including a "valid *prima facie* admiralty claim against the defendant" – implies that the "probable cause" or "reasonable grounds" standard is improper insofar as it purports to go beyond this limited inquiry.
>
> For a plaintiff to show that "it has a valid *prima facie* admiralty claim against the defendant, in the context of maritime attachment, it appears that a plaintiff need not prove anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. [Citations omitted.]

See also Sixteen Thirteen Marine S.A. v. Congentra A.G., 2008 W.L. 2885307 at *7

(S.D.N.Y. 2008) ("This Court need only be satisfied that STM's claims 'are not frivolous.'" [citation omitted.]; Padre Shipping, Inc. v. Yong He Shipping, 553 F. Supp. 2d 328, 331-32 (S.D.N.Y. 2008); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, * 10 (S.D.N.Y. 2007) (Noting the analysis in Tide Line "is consistent with the limited inquiry contemplated by Aqua Stoli and comports with a basic definition of the term "*prima facie*."); Dolco Investments, Ltd. v.

---

[2] Contrary to RICHFIELDMARINE's Memo (at 7), Fesco is not one of the cases that required a plaintiff to adduce evidence of reasonable grounds. After noting a disagreement among the decisions, the Court held "Thus, after *Aqua Stoli*, it appears that the courts should simply consider whether a plaintiff seeking to maintain a maritime attachment has pled a prima facie case justifying that attachment under Rule B." 2007 U.S. Dist. LEXIS 19970 at * 9. However, the plaintiff was permitted to present extraneous evidence.

Moonriver Dev., Ltd., 2007 U.S. Dist. LEXIS 31101 (S.D.N.Y. 2007) ("The Court agrees with the weight of authority in this district, and will apply the *prima facie* standard, as it more closely comports with the Second Circuit's rejection of the 'broader Rule E(4) (f) inquiry' that the reasonable grounds test would necessarily include."); Rhonda Ship Management Inc. v. Doha Asian Games Organising, Committee, 2007 U.S. Dist. LEXIS 72694, * 7-8 (S.D.N.Y. 2007) ("Maritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing. Moreover, Aqua Stoli implies that a plaintiff need not provide evidence to satisfy its burden under Rule E(4) (f)." [Citations omitted.]). See also Transportes Navieros y Terrestes, S.A. DE D.V. v. Fairmount Heavy Transport N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. 2007); OGI Oceangate Transp. Co. Ltd. v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. 2007); Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 2007 U.S. Dist. LEXIS 74477, * 22-23 (S.D.N.Y. 2007).

As stated by the court in Ice Flake Maritime Ltd. v. Westcoast AS, 2007 U.S. Dist. LEXIS 75677 at *4 (S.D.N.Y. 2007: "Certainly it is not the office of a motion to vacate a maritime attachment to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure."

## POINT II

### PLAINTIFF HAS MET THE PLEADING STANDARD

It is well established in this Circuit that under the federal maritime law, a corporate veil may be pierced where it is shown that the corporation was used by another person or entity to "perpetuate a fraud" or where it was "so dominated and its corporate form so dominated such that it primarily transacted the other entity's or individual's business." See, e.g., Tide Line, Inc. at *33 (quoting Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980)). See also Dolco Investments, Ltd. at 271 ("Thus there are two distinct theories under which a maritime plaintiff may pierce the corporate veil: fraud and alter ego."); World Reach Shipping Ltd. v. Indus. Carriers Inc., 2006 U.S. Dist.

-8-

LEXIS 83224, * 10 (S.D.N.Y. 2006) ("Federal common law allows piercing of the corporate veil where (1) a corporation uses its alter ego status to perpetrate a fraud or (2) where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."); Wajilam Exports (Singapore) Pte. Ltd v. ATL Shipping Limited, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (holding same).

Federal common law thus differs from New York law in that the pleading requirements for alter ego liability do not require allegations of both fraud and domination, but merely one or the other. Dolco Investments, Ltd. at 271 ("Under New York law, alter ego liability consists of both elements. However, it is the federal common law—not New York law—which governs this admiralty case. In the Second Circuit, federal common law requires that plaintiff allege only domination to state a claim for alter ego liability.") (citing ITEL Cont. Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd., 909 F.2d 698, 703 (2d Cir. 1990)).

RICHFIELD MARINE argues (Mem. at 5-6) that maritime attachment procedures are subject to a heightened pleading requirement under Supplemental Rule E(2)(a), but acknowledges that this merely means the Complaint must enable a defendant to investigate and respond to the pleading. Supplemental Rule E(2) (a) requires that the complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." To be sure, this standard is somewhat higher than the basic "notice" pleading typically required in civil actions; nevertheless, it cannot be contended here (and indeed it has not been argued) that the defendants have been unable to commence an investigation of the facts and to frame a responsive pleading. See e.g., Sixteen Thirteen Maritime, S.A. at *7 (". . . indeed [defendant] has demonstrated its ability to investigate the facts and construct a response by submitting extensive

materials and legal arguments in connection with this motion"); Wajilam Exports, 475 F. Supp. 2d at 282 ("Although the pleading standard is higher in admiralty cases in which an attachment is sought than in other civil cases, Via Sistina can hardly argue that it has been unable to commence an investigation of the facts and frame a responsive pleading, because it has already done both. Moreover, the relevant allegations concern Via Sistina's own corporate relationships and practices, so there is no apparent reason why it should have difficulty investigating plaintiff's claims without more specifics than are provided in the Complaint.").[3] It is not, in other words, necessary to plead every single fact that may ultimately support a finding that one defendant is the alter ego of the other; rather, "plaintiff need only allege sufficient facts to support an *inference* that [one defendant] has so dominated and disregarded the [other defendant's] form that [the other defendant] primarily transacted [the defendant's] business rather than its own." *Id.* at 283.

    The courts of this district have not been quick to vacate Rule B attachments based on alter ego allegations in a complaint, and such attachments have been upheld on numerous occasions. Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS 35542 *11-14 (S.D.N.Y. 2008) (rejecting argument that allegations were conclusory or speculative); Wajilam, (upholding attachment where complaint alleged that defendants diverted funds in disregard of the companies' corporate separateness); Fesco (upholding attachment where plaintiff alleged payments by one party on behalf of another without contractual obligation to do so); World Reach, (holding amended complaint stated *prima facie* case where it alleged the alter ego was acting as a paying agent in satisfying or arranging for third parties to satisfy the debts of the other company, made hire payments on the other's behalf and was "intimately involved in the specific details of the [Charter

---

[3] Allegations of alter ego not based on fraud are not subject to the stricter pleading requirements of Fed. R. Civ. P. 9(b). Wajilam at 283 n. 8; Dolco at 272.

-10-

Agreement]."); SPL Shipping Ltd. at *11 ("Plaintiff has essentially made three allegations against Nirma: first that Nirma has in this case, and other cases, made payments on behalf of Gujarat to third parties; second, that there existed such unity of ownership and interest ... that no separation exists between Nirma and Gujarat, such that the corporate form has been disregarded; and third, that Nirma has dominated and used Gujarat for their own purposes such that there is no meaningful difference between the three entities and there has been an intermingling of funds between the several entities. Both factors are found among the list of factors a court may consider when alter ego status has been pled, and are sufficient to state a valid admiralty claim.") (internal quotation marks omitted); Tide Line, * 44-46 (allowing attachment to stand on amended complaint alleging that defendant was a shell corporation, was a chartering arm through which the other defendant conducted its business, was wholly dominated, had no identifiable assets employees or assets, had payments made on its behalf, and had corporate and business functions performed for it by its controlling company); T&O Shipping, Ltd. v. Source Link Co., Ltd., 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. 2006) (denying motion to dismiss amended complaint where defendants were commonly owned and allegedly ignored corporate distinctness in contractual dealings with plaintiff and other parties).

Additionally, although a plaintiff is not required to produce evidence outside the Complaint, it should be permitted to do so if it chooses. Hawknet, at **10-11 (Although this is an "open question" [citation omitted], we believe that ignoring a record containing such submissions would not serve the interests of judicial efficiency. Vacating attachments in the face of substantial new allegations would simply force plaintiffs to file a duplicate action after its initial action is dismissed, exalting form over substance and allowing potentially validly attached funds to escape the jurisdiction." Id. at n. 1). Here, Plaintiff relies not only upon the evidence it was compelled to

-11-

adduce in response to the Tan Declarations, but also upon the inferences to be drawn from

RICHFIELD MARINE'S attempts to mislead the Court and conceal the relationship.

As the cases discussed above make perfectly clear, Plaintiff's alter ego allegations are more

than adequate to survive RICHFIELD MARINE's motion to vacate the attachment. Accordingly, the

motion should be denied.

## POINT III

### IF THE COURT CONSIDERS THE COMPLAINT TO BE INSUFFICIENT, PLAINTIFF SHOULD HAVE AN OPPORTUNITY TO AMEND IT, AND THE RESTRAINED FUNDS SHOULD REMAIN UNDER ATTACHMENT PURSUANT TO THE SECOND AMENDED COMPLAINT

If the Court considers the averrals in the Amended Complaint to be insufficient, Plaintiff

requests an opportunity to amend it in the form submitted as Ex. 3 to the Greenbaum Declaration,

and asks that the attached funds remain under restraint and subject to attachment under the Second

Amended Complaint, as permitted in Hawknet, Tideline and World Reach.

## POINT IV

### ELECTRONIC FUND TRANSFERS TO A DEFENDANT ARE SUBJECT TO MARITIME ATTACHMENT

The Court should reject RICHFIELD MARINE's request that the attachment order be

restricted to fund transfers originated by it, to the exclusion of fund transfers of which it is the

beneficiary. With a single exception, the many cases that considered this issue have held that Aqua

Stoli confirms that transfers to a defendant as beneficiary may be attached. See Ice Flake, 2007 U.S.

Dist. LEXIS at * 5-6 and cases cited therein.

-12-

## CONCLUSION

For the foregoing reasons, RICHFIELD MARINE's motion to vacate the attachment or

modify the attachment order should be DENIED, and this Court should grant Plaintiff such other and

further relief as the Court may deem just and equitable.

Dated: New York, New York
      August 8, 2008

                BLANK ROME, LLP
                Attorneys for Plaintiff

By:

                Jack A. Greenbaum. (JG 0039)
                A Member of the Firm
                The Chrysler Building
                405 Lexington Avenue
                New York, New York 10174
                Tel: (212) 885-5000
                Fax: (212) 885-5001
                JGreenbaum@blankrome.com

-13-