UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KINGS OCEAN SHIPPING CO. LTD.

                *Plaintiff,*　　　　　　　　　08 Civ. 1709 (RJS)

   -   against -

RICHFIELD CORPORATION LTD. and
RICHFIELD MARINE AGENCIES (S) PTE. LTD.,

               *Defendants.*
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO VACATE MARITIME ATTACHMENT AND TO DISMISS**


**CHALOS & CO, P.C.**
123 South Street
Oyster Bay, New York  11771
Tel:  (516) 714-4300
Fax:  (866) 702-4577
E-mail:  gmc@chaloslaw.com

Attorneys for Defendant
RICHFIELD MARINE AGENCIES (S) PTE. LTD.

## INTRODUCTION

**COMES NOW**, Defendant, Richfield Marine Agencies (S) Pte. Ltd. ("RICHFIELD MARINE"), by and through undersigned counsel and submits this Memorandum of Law and the accompanying Declarations of Chak Chew Tan and George M. Chalos, Esq., in support of this Motion to Vacate the Court's *ex parte* Orders of Attachment dated February 22, 2008 and June 23, 2008 (Docket Entries #2 and #6, respectively). Defendant makes this motion pursuant to Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, Local Admiralty Rule E.1, and Fed. R. Civ.P. 12(b)(2) and 12(b)(6). For the reasons more fully set forth below and in the accompanying declarations, Defendant, RICHFIELD MARINE, respectfully requests that the pending attachments be vacated and Plaintiff's Amended Verified Complaint be dismissed in its entirety.

## FACTUAL BACKGROUND

For the sake of brevity, the salient facts pertaining to the instant Motion to Vacate the Process of Maritime Attachment and Garnishment and Dismiss the Complaint are more fully set forth in the accompanying Declarations of Chak Chew Tan and George M. Chalos, Esq.

## POINT I

### A HEARING ON THIS APPLICATION SHOULD BE SET WITHIN THREE (3) COURT DAYS

To ensure the constitutionality of the attachment mechanism provided for under Rule B, Supplemental Admiralty Rule E(4)(f) and the Local Rules of this Court provide for a prompt adversary hearing following any attachment. Supplemental Admiralty Rule E(4)(f) provides that any person claiming an interest in the attached property is "entitled

1

to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supp. Rule E(4)(f). The Local Rules of the Southern District of New York provide:

> *The adversary hearing following arrest or attachment of garnishment that is called for in supplemental Rule E(4)(f) shall be conducted within three (3) court days, unless otherwise ordered.*

S.D.N.Y. Local Rule E.1.

This Rule speaks in mandatory terms and is necessary to give a defendant its day in court after a plaintiff has been able to obtain *ex parte* relief, outside the adversary system and with only minimal oversight.[1] Accordingly, Defendant, RICHFIELD MARINE, respectfully requests that a hearing be set within three (3) days.

## POINT II

### THE BURDEN IS ON PLAINTIFF TO SHOW WHY THE ORDER SHOULD NOT BE VACATED

To obtain a maritime attachment, a plaintiff must comply with Supplemental Admiralty Rule B ("Rule B"), which states in relevant part:

> *If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.*

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

---

[1] The Advisory Committee has stated that at the Rule E(4)(f) hearing, the defendant can attack not only the attachment of funds, but also "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), advisory committee's note.

2

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B an opportunity to appear before a district court to contest the attachment. Rule E(4)(f) states, in relevant part:

> *Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.*

Fed. R. Civ. P. Supp. R. E(4)(f).

"Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).

In order to sustain an attachment, a plaintiff must show at the Rule E(4) hearing that it has fulfilled the "filing and service requirements of Rules B and E" and that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445 (footnote omitted). If a plaintiff fails to demonstrate that it has met *any* of the requirements of Rules B and E, the district court must vacate the attachment. Aqua Stoli, 460 F.3d at 445.

## POINT III

### PLAINTIFF'S CLAIMS AS AGAINST RICHFIELD MARINE DO NOT FALL WITHIN THIS COURT'S ADMIRALTY AND MARITIME JURISDICTION

A maritime attachment pursuant to Supplemental Admiralty Rule B can only be invoked when a plaintiff makes a prima facie showing that the plaintiff has a valid maritime claim against defendant. "The absence of maritime jurisdiction would prove

3

fatal to plaintiff's attachment." Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA, 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999). In the present case, neither Plaintiff's Verified Complaint (Docket Entry #1) nor its Amended Verified Complaint (Docket Entry #5) establishes a maritime cause of action against Defendant, RICHFIELD MARINE. Consequently, the Orders of Attachment should be vacated as a matter of law. Sea Transport Contractors v. Industries Chemiques Du Senegal, 411 F. Supp. 2d 386, 392 (S.D.N.Y. 2006) (citation omitted); *see also* Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) (which held that in order to support the issuance of a maritime attachment, "the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333") (citation omitted).

There is no dispute that RICHFIELD MARINE was not a party to the September 21, 2007, charter-party agreement between Plaintiff and Richfield Corporation Limited. Because Defendant, RICHFIELD MARINE, was not a party to the charter party agreement, Plaintiff can have no claim against RICHFIELD MARINE for its breach, and therefore was not entitled to the Attachment Order, unless RICHFIELD MARINE is the alter ego of Richfield Corporation Limited. The Second Circuit in MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC, 268 F.3d 58 (2d Cir. 2001) has identified several factors relevant to the issue of whether one company is the alter ego of another:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debt by the dominating entity, and (10) intermingling of property between entities.

Id. at 63. Here, it would be pure speculation, in complete contradiction to the sworn Declaration of Chak Chew Tan, to conclude that RICHFIELD MARINE and Richfield Corporation Limited are alter egos. *See* Tan Declaration, at para 12.

Plaintiff's Amended Verified Complaint fails to set forth sufficient allegations concerning RICHFIELD MARINE to justify the attachment of RICHFIELD MARINE's property. Instead, Plaintiff advances alter ego theories of liability that rely on conclusory, speculative and baseless allegations. In short, Plaintiff manipulates the concept of alter ego liability, as well as the Rule B attachment procedure, in order to unjustly continue the attachment of RICHFIELD MARINE's property where RICHFIELD MARINE is a non-party with no connection whatsoever to the dispute underlying this matter.

All pleadings seeking maritime attachments are subject to heightened pleading requirements pursuant to Rule E. Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y., 2007) (Sweet, J.). Moreover, Supplemental Rule E demands a level of "particularity" greater than that otherwise tolerated in a normal notice pleading. Fed. R. Civ. P. E(2)(a); see also, P.R. Ports Auth. V. Barge Katy-B, 427 F.3d 93, 105 (1st Cir. 2005)("This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings"). The rule provides that a "complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Id. (quoting Rule E(2)(a)). "This heightened pleading standard is...a legal rule designed to counterbalance the unique and drastic remedies that are

5

available in *in rem* admiralty proceedings. Id. (quoting P.R. Ports Auth. V. Barge KATY – B, 427 F. 3d 93, 105 (1st Cir. 2005)).

The heightened pleading standard set forth in Rule E(2)(a) is applicable to actions seeking maritime attachment. However, the need for such heightened pleading requirements is dramatically magnified when, (as is the case here), the underlying claim rests upon *alter ego* allegations. In Brave Bulk Transport Ld., v. Spot on Shipping Ltd., 2007 U.S. Dist. LEXIS 81137, (S.D.N.Y., 2007) (McMahon, J.), the court held that "wholly conclusory allegations [were] simply insufficient." Id. at *16. "Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendants in interest are tenuous [or] non-existent." Id. (emphasis added).

A Rule B attachment of an alleged alter ego's property cannot be sustained in the absence of allegations, with particularity, of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil. *See, generally,* Dolco Investments, Ltd. v. Moon river Development, Ltd., *supra* ("Dolco fails to meet this burden because it has not included any factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco 'from time to time' . . . [M]ore is required."); see also, Stevedoring Serv's of Am. v. Ancora Transp., N.V., 59 F.3d 879, 883 (9th Cir. 1995) ("Armilla (London) introduced evidence that Ancora was the only party to the stevedoring contract with SSA and that Armilla (London), not Ancora, owned the funds

in question. SSA offered little more than bare assertions that Armilla (London) was an alter ego of Ancora."); Ullises Shipping Corp. v. FAL Shipping Co., No. 05 Civ. 9424 (SAS), 2006 U.S. Dist. LEXIS 2283, *19 (S.D.N.Y. Jan. 20, 2006) ("Ullises provides no facts in support of its 'partner' and 'joint venturer' theories, nor does it present any evidence that the FAL defendants use one another as alter egos to perpetrate a fraud. Furthermore, with regard to FAL energy, the evidence Ullises presents falls short of creating reasonable grounds for attaching FAL Energy's assets. It is not sufficient that FAL Energy and other FAL Defendants share common ownership. Nor is it sufficient that FAL Energy does not observe some of the formalities of separate corporate existence."); Atwood Navigation, Inc. v. M/V Rizal, No. 89-1221, 1989 U.S. Dist LEXIS 1828, *4 (E.D. Pa. Feb. 24, 1989) ("Plaintiff Atwood suggests that, in due time, it will show that the court should 'pierce the corporate veil" to reach defendant Shipping and Trading. This proposition is offered without any support. I cannot conclude in light of the record that plaintiff has met its burden under supplemental Rule R(4)(f)."); International Marine Consultants, Inc. v. Captain A. Karavias, No. 82 Civ. 8296 (CMM), 1985 U.S. Dist. LEXIS 19272, *4 (S.D.N.Y. Jun. 3, 1985) ("Plaintiff's allegation that Karavias used these corporations to insulate himself from liability is unsubstantiated.").

    RICHFIELD MARINE contends that the plaintiff in a Rule B attachment proceeding based upon alter ego claims must make an evidentiary showing that it has reasonable grounds to support its allegations. Fesco Ocean Management Ltd., v. High Seas Shipping Ltd., 2007 U.S. Dist. LEXIS 19970 (S.D.N.Y., 2007) (Buchwald, J.) (applying a reasonable grounds standard to a Rule B attachment claim based upon alter

ego allegations but indicating that the law in the Second Circuit remains uncertain regarding what standard should apply).

At a minimum, the recent Rule B cases clearly demonstrate that Plaintiff must make some tangible showing that its allegations are more than mere speculation. Thus, purely theoretical allegations that loosely correspond to the factors applied within the Second Circuit for evaluating the sufficiency of alter ego pleadings –which is precisely what Plaintiff has done here – are not enough.

In Fesco, the Court denied a motion to vacate because the plaintiff offered "proof" that an alleged alter ego defendant had made at least ten payments on behalf of another defendant with which the plaintiff was in privity of contract. Id. at *11. Moreover, the Fesco court's decision was bolstered by the fact that the alleged alter ego defendant has submitted a supplemental declaration that "tacitly acknowledged that statements in [its earlier declaration had been] misleading, if not false," Id. at *5, 12 (noting "the inconsistencies between [the declarations] suggest[ed] that [the affiant] endeavored to hide some or all of [the relationships between the defendants] from the Court." Id. at *12).

Similarly, in Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y., 2006) (Wood, J.), the court vacated an attachment as against an alter ego defendant but stayed release of the funds for a two (2) week period of time pending the plaintiff's filing of an amended complaint. Id. at *55-56. The court found that the plaintiff's complaint did not "state a prima facie maritime claim against [the defendant] on the basis of alter ego liability." Id. at *42. However, the plaintiff proposed amended allegations that did demonstrate the existence of such a claim because they set

8

forth detailed factual allegations that: (1) Transclear, the alter ego defendant has made a payment to the plaintiff, on a specified date, on behalf of the other defendant, Eastrade; (2) Transclear "was caught paying" Eastrade's debts in connection with a separate maritime attachment case against Eastrade; (3) "almost all correspondence sent to [the plaintiff concerning the charter] originated from Transclear"; and (4) "Transclear appointed an arbitrator on [Eastrade's] behalf in a 2001 arbitration in which Transclear itself was not a party." Id. at *45-46.

In the instant matter, the allegations made in plaintiff's Verified Amended Complaint are simply unsupportable and insufficient to sustain the pending Rule B attachment. The proposed allegations: (1) fail to satisfy the heightened pleading requirements of Rule E(2)(a); (2) run roughshod over the concerns expressed by the Brave Bulk Transport Court concerning excessive extension of Rule B attachments where alter ego liability claims are based upon tenuous links; and (3) pale in comparison to the degree of factual, testable specificity set forth in Tide Line and Fesco.

Here, there is simply no basis upon which Plaintiff may claim that RICHFIELD MARINE is the alter ego of Richfield Corporation Limited. *See* Tan Declaration at paras. 12-17, 19-20. Thus, Plaintiff's vague allegations, without any hard evidence that RICHFIELD MARINE is the alter ego of Richfield Corporation or vice versa, have no merit.

Accordingly, RICHFIELD MARINE respectfully submits that the attachment should immediately be vacated, the previously restrained funds released and the matter as against RICHFIELD MARINE be dismissed in its entirety.

9

# POINT IV

## THE COURT DOES NOT PROPERLY HAVE JURISDICTION AND THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A. *Personal jurisdiction over RICHFIELD MARINE does not exist pursuant to NY CLPR 301.*

Jurisdiction over Defendant, RICHFIELD MARINE cannot be established pursuant to CPLR § 301 which provides that New York courts "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." The provision allows New York courts to apply the traditional standard for personal jurisdiction, pursuant to which courts may exercise jurisdiction over foreign corporations that are present in the forum actually or constructively through pervasive contacts. Sedig v. Okemo Mountain, 612 N.Y.S.2d 643, 644 (2d Dept. 1994) ("Jurisdiction under *CLPR 301* may be acquired over a foreign corporation only if that corporation does business here 'not occasionally or casually, but with a fair measure of permanence and continuity' so as to warrant a finding of its 'presence' in this jurisdiction"). RICHFIELD MARINE is a foreign company that has never been a resident or domicile of the State of New York. *See* Tan Declaration, at para 5. Moreover, RICHFIELD MARINE has never been licensed or authorized to do business in the State of New York; does not transact any business in the State of New York; does not have any customers in the State of New York, and/or otherwise has not voluntarily subjected itself to the jurisdiction of the State of New York. *Id.* at paras. 29-32, 35.

### B. *Personal jurisdiction does not exist pursuant to NY CPLR 302.*

Similarly, RICHFIELD MARINE is not subject to jurisdiction under the New York long-arm statute, CPLR § 302(a), both because it lacks the type of contact with the

10

forum state that the statute requires and because any assertion of jurisdiction would not comply with constitutional requirements. "To determine whether a non-domiciliary may be sued in New York, we first determine whether our long-arm statute *(CPLR 302)* confers jurisdiction over it in light of its contacts with this State. If the defendants' relationship with New York falls within the terms of *CPLR 302,* we determine whether the exercise of jurisdiction comports with due process." LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307 (N.Y. 2000).

Section 302(a) allows New York courts to exercise personal jurisdiction over non-tort and non-family law claims against out-of-state defendants only where the claims arise out of business transacted by the defendant in the State or property owned by the defendant in the State:

> **(a) Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>> \*\*\*\*
>> 4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

Here, RICHFIELD MARINE does not own, use, possesses or maintain any bank accounts, plants, warehouses or property of any kind in the State of New York." *See* Tan Declaration, paras. 33-34. As such, CPLR 302(a)(4) cannot support the assertion of personal jurisdiction over defendants. Moreover, Plaintiff's claims concern a breach of charter party agreement for the carriage of goods from Shanghai, China to Luanda,

11

Angola. Plaintiff's cause of action does not arise from business transacted by Defendants in New York or in any way relate to the state within the meaning of CPLR 302(a)(1). Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc. 10 F Supp. 2d 334, 339 (S.D.N.Y. 1998) ("[i]n order to establish personal jurisdiction under *§ 302(a)(1)*, the plaintiff must show (1) that the defendant 'transacts business' within the state, and (2) that the claim 'arises from' that transaction.").

> c. *Even if the assertion of personal jurisdiction over RICHFIELD MARINE complied with the provisions of NY CPLR § 302, the assertion of jurisdiction would be inconsistent with constitutional requirements.*

Finally, even if personal jurisdiction over RICHFIELD MARINE existed pursuant to the New York long-arm statute (which it does not), this Defendant could not be subjected to the personal jurisdiction of this Court because the exercise of such jurisdiction would violate Defendant's due process rights under the Constitution. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002) ("If there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment"). Due process demands that defendants have "certain minimum contacts with [the forum] such that the maintenance of the suite does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, (1945) (internal citation omitted). To have minimum contacts there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz,

471 U.S. 462, 475, 1055 S. Ct 2174, 2183 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958).

In the instant matter, RICHFIELD MARINE clearly has no contacts with the State of New York that, which *might,* let alone does, support a conclusion that it had in any way purposefully availed itself of the privilege of doing business in New York. For the reasons more fully set forth above, it is respectfully submitted that any assertion of personal jurisdiction in New York would be inconsistent with due process principles and, as such, it is respectfully requested that this action as against RICHFIELD MARINE be dismissed in its entirety.

## POINT V

### IN THE ALTERNATIVE, THE ATTACHMENT ORDER SHOULD BE MODIFIED TO DIRECT ONLY THE ATTACHMENT OF EFTs ORIGINATED BY RICHFIELD MARINE[2]

In the seminal case of Winter Storm Shipping Ltd. v. TPI, 310 F. 3d 263 (2d Cir. 2002) ("Winter Storm"), the Second Circuit held that pursuant to Rule B, a plaintiff could attach an EFT originated by a defendant as it was cleared by a bank in New York. The Second Circuit panel held that an EFT was "property" under maritime law. The panel in Winter Storm did not have before it the question of whether an EFT was property of a defendant-beneficiary of an EFT.

Between the decision of the panel in 2002 in Winter Storm and the decision of a different panel in 2006 in Aqua Stoli, *supra,* several district court judges held that EFTs were property "of" a defendant-beneficiary attached under Rule B, as well as of its originator, even though the originator and beneficiary were separate persons. *E.g.,* Noble

---

[2] This point is before the Court due to case law which has developed since 2002 concerning a plaintiff's right to attach an EFT as "property" within the meaning of Supplemental Rules B and E.

Shipping, Inc. v. Euro-Maritime Chartering Limited, 2003 U.S. Dist. LEXIS 23008 (S.D.N.Y., 2003); HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. de C.V., 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y., 2005); Vamvaship Maritime Ltd., v. Shivnath Rai Harnarain (India) Ltd., 2006 U.S. Dist. LEXIS 21114 (S.D.N.Y., 2006); Compania Sudamerica de Vapores S.A. v. Sinochem Tianjin Co., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y., 2007).

In Aqua Stoli, the parties did not address the question whether an EFT was property of a defendant-beneficiary. Nevertheless, early in the Aqua Stoli decision, the panel stated, "Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that jurisdiction." 460 F. 3d 436. However, since the Aqua Stoli panel did not have before it for decision the issue of whether an EFT is attachable as property of a defendant-beneficiary, this statement is obiter dictum, defined by Black's Law Dictionary (8th ed. at p. 1102) as: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)."

Then, in footnote 6, (460 F. 3d at 446 n.6), the Aqua Stoli panel articulated its concern about an issue it believed has not been adequately addressed in Winter Storm and, by implication, in Aqua Stoli (because it was not an issue in that case), namely, "whose" property is an EFT as it passes through an intermediary bank in New York.

In Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222, 225 (S.D.N.Y., 2006), Judge Rakoff seized upon the questions raised in footnote 6 of Aqua Stoli and held that an EFT could not be attached as property of a defendant-beneficiary. Judge Rakoff acknowledged that Aqua Stoli "stated the broad rule that 'EFTs to or from

14

a party are attachable by a court as they pass through banks located in that court's jurisdiction." <u>Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.</u>, 461 F. Supp. 2d 222, 225 (S.D.N.Y., 2006). However, his Honor construed <u>Aqua Stoli</u> footnote 6 to require a narrow reading of <u>Winter Storm</u> and specifically borrowed from state law to hold that an EFT is only the originator's property. <u>Id.</u>

In the circumstances, RICHFIELD MARINE respectfully submits that this Court should follow Judge Rakoff's holding in <u>Seamar Shipping</u> that an EFT is the property of an originator while in transit and <u>not</u> the property of the beneficiary while in transit. In the present case, a number of the EFTs presently restrained as a result of the Attachment Order, are inward remittances to RICHFIELD MARINE as the beneficiary of these funds on behalf of its clients.

Accordingly, if the Court does not vacate the attachment and dismiss the action as against RICHFIELD MARINE in its entirety as requested, the Attachment Order should be modified to direct only the attachment of EFTs originated by RICHFIELD MARINE.

## CONCLUSION

Based upon the foregoing and the accompanying Declarations, it is respectfully requested that the pending Order of the Attachment be vacated and the matter dismissed in its entirety. In the alternative, Defendant requests that the Attachment Order be modified to permit restraint of only those EFT's where RICHFIELD MARINE was and or may be the originator. Defendant, RICHFIELD MARINE, further requests that the Court grant such other and further relief as it deems just and proper under the

circumstances, including an award of its legal fees and expenses, expended in contesting this wrongful attachment.

Dated: Oyster Bay, New York
       July 29, 2008

Respectfully submitted

**CHALOS & CO, P.C.**
*Attorneys for Defendant*
RICHFIELD MARINE
AGENCIES(S) PTE. LTD.

By: _____
George M. Chalos (GC 8693)
123 South Street
Oyster Bay, New York  11771
Tel: (516) 714-4300
Fax: (866) 702-4577
E-mail: gmc@chaloslaw.com